UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
CENTRAL ISLIP DIVISION

IN RE

    O HYONG LEE AND YOUNG HEE LEE

             DEBTORS

HEARING DATE:  September 9, 2019
HEARING TIME: 9:30 a.m.
HEARING PLACE:  Central Islip

CHAPTER 7

CASE NO. 8-19-73985-reg

JUDGE: Robert E. Grossman

## NOTICE OF MOTION OF NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER REQUESTING ENTRY OF AN ORDER GRANTING *IN REM* RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(4), WITH RESPECT TO THE FIRST MORTGAGE LIEN ON REAL PROPERTY LOCATED AT 74 LEE AVENUE, ALBERTSON, NY 11507 OR, IN THE ALTERNATIVE, GRANTING RELIEF PURSUANT TO 11 U.S.C. §§ 362(d)(1) AND (2)

**PLEASE TAKE NOTICE** that Nationstar Mortgage LLC d/b/a Mr. Cooper as servicer for U.S. Bank National Association, as Trustee for CSFB Mortgage-Backed Pass-Through Certificates, Series 2004-7 by and through its undersigned counsel, will move this Court as set forth below:

JUDGE:                   HON. Robert E. Grossman

RETURN DATE & TIME:   September 9, 2019 at 9:30 a.m.

COURTHOUSE:        United States Bankruptcy Court
                         Alfonse M. D'Amato U.S. Courthouse
                         290 Federal Plaza
                         Central Islip, NY 11722

RELIEF REQUESTED:     Entry of an order pursuant to 11 U.S.C. § 362(d)(4) providing that any subsequent bankruptcy filings affecting real property described herein shall not, as provided by § 362(d)(4), operate as a stay against such real property for a period of two years from the entry of such an order; or, in the alternative, for  an order pursuant to 11 U.S.C. § 362(d)(1) and/or (d)(2) granting relief from the automatic stay and for such other and further relief as this Court may deem just and proper and for such other and further relief as this Court may deem just and proper.

14-034475

**PLEASE TAKE FURTHER NOTICE,** that answering affidavits, if any, to the relief requested, must be served upon and received by Shapiro, DiCaro & Barak, LLC at their offices at 175 Mile Crossing Boulevard, Rochester, NY 14624 and filed with the Clerk of the United States Bankruptcy Court for the Eastern District of New York District of New York at United States Bankruptcy Court, United States Bankruptcy Court, Alfonse M. D'Amato U.S. Courthouse, 290 Federal Plaza, Central Islip, NY 11722 no later than seven (7) days prior to the return date of this motion.

Dated:      July 11, 2019
            Rochester, New York

                                    /s/ Nicole DiStasio
                                    Nicole DiStasio
                                    Bankruptcy Attorney
                                    Shapiro, DiCaro & Barak, LLC
                                    Attorneys for Nationstar Mortgage LLC d/b/a Mr.
                                    Cooper as Servicer for U.S. Bank National
                                    Association, as Trustee for CSFB Mortgage-Backed
                                    Pass-Through Certificates, Series 2004-7
                                    175 Mile Crossing Boulevard
                                    Rochester, New York 14624
                                    Telephone: (585) 247-9000
                                    Fax: (585) 247-7380

**THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. THIS NOTICE IS REQUIRED BY THE PROVISIONS OF THE FAIR DEBT COLLECTIONS PRACTICES ACT AND DOES NOT IMPLY THAT WE ARE ATTEMPTING TO COLLECT MONEY FROM ANYONE WHO HAS DISCHARGED THE DEBT UNDER THE BANKRUPTCY LAWS OF THE UNITED STATES.**

TO:      SERVICE LIST

14-034475

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
CENTRAL ISLIP DIVISION

IN RE

      O HYONG LEE AND YOUNG HEE LEE

                DEBTORS

HEARING DATE:  September 9, 2019
HEARING TIME:  9:30 a.m.
HEARING PLACE:  Central Islip

CHAPTER 7

CASE NO. 8-19-73985-reg

JUDGE: Robert E. Grossman

**MOTION OF NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER REQUESTING ENTRY OF AN ORDER GRANTING *IN REM* RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(4), WITH RESPECT TO THE FIRST MORTGAGE LIEN ON REAL PROPERTY LOCATED AT 74 LEE AVENUE, ALBERTSON, NY 11507 OR, IN THE ALTERNATIVE, GRANTING RELIEF PURSUANT TO 11 U.S.C. §§ 362(d)(1) AND (2)**

Nicole DiStasio, an attorney at law duly admitted to practice before the Courts of the State of New York and the U.S. District Court for the Eastern District of New York, hereby affirms the following to be true under penalty of perjury

1.      I am an associate with the law firm of Shapiro, DiCaro & Barak, LLC, attorneys for Nationstar Mortgage LLC d/b/a Mr. Cooper as servicer for U.S. Bank National Association, as Trustee for CSFB Mortgage-Backed Pass-Through Certificates, Series 2004-7, a secured creditor of O Hyong Lee and Young Hee Lee ("Debtors").  As such, I am fully familiar with the facts and circumstances of this case.

2.      I make this Affirmation in support of the within request for an order pursuant to 11 U.S.C. § 362(d)(4)[1] with respect to certain real property described herein, providing that any subsequent bankruptcy filing affecting such real property shall not, as provided by § 362(d)(4), operate as a stay against such real property for a period of two years from the filing of such an

---

[1] Unless otherwise stated, all statutory references are to the provisions of the United States Bankruptcy Code.

14-034475

order; and/or for relief from the automatic stay pursuant to 11 U.S.C. §§ 362(d)(1) and (2) against the subject property generally described as74 Lee Avenue Albertson, NY 11507.

     3.     Jurisdiction is conferred on this Court by the provisions of 28 U.S.C. § 1334. This is a proceeding to terminate and annul the automatic stay and is therefore a "core" proceeding within the meaning of 28 U.S.C. § 157(b)(2).

## I. PRELIMINARY STATEMENT IN SUPPORT OF *IN REM* RELIEF

     4.     Over the past five years, a pending foreclosure action against the real property located at 74 Lee Avenue Albertson, NY 11507 (the "Property") has been halted or delayed by various tactics, including five (5) bankruptcy filings of O Hyong Lee and Young Hee Lee ("Debtors").

     5.     The first case was filed by O Hyong Lee on March 31, 2017 in the Bankruptcy Court for the Eastern District of New York under Chapter 13 as Case No 8-17-71915-reg (the "First Case"). The Debtor through counsel requested participation in this court's loss mitigation program in the First Case. The Debtor failed to ever submit an initial complete loss mitigation package to be reviewed. Loss mitigation was terminated at the first hearing held on July 10, 2017 for the Debtor's failure to submit documents. The first case was dismissed pursuant to the Trustee's Motion to Dismiss under 11 U.S.C §§ 521 & 1307 (c). An order dismissing the case was entered on July 21, 2017 *[ECF Doc. No. 27]*.

     6.     The second case was filed by O Hyong Lee on October 9, 2017 in the Bankruptcy Court for the Eastern District of New York under Chapter 13 as Case No 8-17-76169-reg (the "Second Case"). The Second Case was dismissed pursuant to the Trustee's Motion to dismiss under 11 U.S.C §§ 521 & 1307 (c) as the Debtor failed to provide the Trustee with Federal Tax Returns, Affidavit of Contribution from Spouse and Son and Contract of Sale despite the fact

that the success of the Chapter 13 Plan was contingent upon these factors. An order dismissing the case was entered on February 20, 2018 *[ECF Doc. No. 20]*.

7.      The third case was filed by Young Hee Lee on April 20, 2018 in the Bankruptcy Court for the Eastern District of New York under Chapter 13 as Case No 8-18-72686-reg (the "Third Case"). A Motion for Relief from the Automatic Stay was filed by Movant in the Third Case. At the time the Motion was filed the Debtor failed to make any post-petition payments, and as such the account was due for the May 1, 2018 payment with a total amount owed to Movant in the amount of $458,375.06. The Debtor, through counsel, raised opposition to the filed Motion alleging Movant did not have standing and that Movant would be adequately protected once the property was sold. The issue of standing was decided in state court by an Order Granting Summary Judgement entered on November 26, 2015. The MFR was adjourned approximately two months to allow the Debtor time to market and sell the premises. Relief from the Automatic Stay was granted at the hearing held on September 26, 2018 as the Debtor failed to take any steps toward selling the property and it was evident that the Debtor had no intent to sell the property. An order granting relief from the Automatic Stay was entered on October 2, 2018 *[ECF Doc. No. 30]*. The Third Case was ultimately dismissed by Order entered October 29, 2018 *[ECF Doc No. 32]*.

8.      The fourth case was filed by Young Hee Lee on January 5, 2019 in the Bankruptcy Court for the Eastern District of New York under Chapter 13 as Case No 8-19-70090-reg (the "Fourth Case"). The Debtor, through counsel, moved to extend the automatic stay in the Fourth Case stating in pertinent part that the Debtor could now make monthly payments in the amount of $5,526.94 and once again proposed to sell the subject property. The Debtor and Debtor's counsel both failed to show up at the hearing to extend the automatic stay

14-034475

despite requesting such relief. As such, the request extending the automatic stay was denied and the Fourth Case was dismissed pursuant to the Trustee's Motion under 11 U.S.C §§ 521 & 1307 (c). An order was entered on April 2, 2019 *[ECF Doc. No. 20]* dismissing the Fourth Case.

9.    The fifth and instant case was filed by O Hyong Lee and Young Hee Lee on June 1, 2019 (through the same counsel that appeared in the Third and Fourth Cases) in the Bankruptcy Court for the Eastern District of New York under Chapter 7 as Case No 8-19-73985-reg (the "Fifth Case"). Movant avers that there was no realistic prospect of reorganization in the instant Case, as the instant case was a Chapter 7 filing and that the instant case was filed in bad faith, as with the others for the sole purpose of delaying and preventing the creditor for proceeding with their rights in state court. The court should note that there is currently no stay in effect for Young Hee Lee under stay under 11 U.S.C. § 362, as the Third and Fourth Cases were both dismissed within the preceding year. The court should also note that despite being represented by various counsel the Debtor and Joint Debtor failed to ever formulate a confirmable Chapter 13 Plan, sell the subject property, or successfully participate in loss mitigation. Upon information and belief, the majority of the bankruptcy cases were filed solely to impede the foreclosure action of Movant.

10.    The Property was noticed to be sold at a foreclosure sale five times: The first sale, scheduled for April 4, 2017 was cancelled for the First Case filed three days prior. The second sale, scheduled for October 10, 2017 was cancelled for the Second Case filed one day prior. The third sale, scheduled for April 24, 2018 was cancelled for the Third Case filed four days prior. The fourth sale, scheduled for January 8, 2019 was cancelled for the Fourth Case filed three days prior. The fifth sale, scheduled for June 4, 2019 was cancelled for the current case filed three days prior.

11.     In addition to multiple bankruptcy filings outlined herein the Debtors have engaged in significant state court litigation in pertinent part challenging standing and stating Movant did not properly apply funds to the account prior to the complaint being filed. The Debtors were unsuccessful in such attempts as an Order granting Summary Judgement was entered on November 24, 2015, however such litigation created lengthy and costly delays to Movant.

12.     The Debtors are not utilizing the automatic stay for legitimately seeking a fresh start. Rather, the multiple bankruptcy filings of the Debtors are an abuse of the automatic stay and the bankruptcy system used to thwart creditors' efforts to enforce their state law rights in their collateral. There is more than an adequate basis to conclude, under § 362(d)(4), the multiple and largely unprosecuted cases are part of a scheme to delay, hinder, or defraud the efforts of and other creditors who seek to enforce their state law remedies in the affected real property. Furthermore, the Property has been transferred without the consent of Movant.

## FACTUAL BACKGROUND

13. Movant is a secured creditor of the Debtors pursuant to a Note executed by O Hyong Lee and Young Hee Lee on August 17, 2004, whereby Debtors promised to repay the principal amount of $528,500.00 plus interest to Countrywide Home Loans, Inc. (the "Note"). To secure the repayment of the Note, Co-Debtor and Debtor executed a Mortgage in favor of Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Home Loans, Inc., which was duly recorded in the Office of the Clerk of the County of Nassau on August 30, 2004 in Liber Book: M 27497, Page: 233 (the "Mortgage," Note and Mortgage, collectively, as the "Loan"), encumbering real property located at 74 Lee Avenue, Albertson, NY 11507 (the "Property"). The Loan was assigned to Movant as memorialized by an Assignment of Mortgage dated August

14-034475

29, 2013 and duly recorded on October 3, 2013 ("Assignment of Mortgage"). Copies of the

Note, Mortgage, and Assignment of Mortgage are annexed hereto as **Exhibit "A."**

14.    Foreclosure proceedings with respect to the Property were initiated by the filing

of a summons and compliant in the Supreme Court of the State of New York, County of Nassau

on August 19, 2014 under Index No. 14-008069

15.    Judgment of Foreclosure and Sale ("JFS") was entered on December 22, 2016

granted by Hon. Thomas A. Adams, J.S.C. A copy of the JFS is annexed hereto as **Exhibit "B"**

16. The default under the Loan is six (6) years; the Loan is currently due for the June 1,

2013 installment. A copy of Relief from Stay Real Estate Cooperative Apartments Affidavit (the

"Relief from Stay Worksheet"), further detailing the default, is annexed hereto as **Exhibit "C"**.

### III.  GROUNDS FOR *IN REM* RELIEF UNDER 11 U.S.C. § 362(d)(4)

17.    Taken together, the five bankruptcy cases and state court litigation provide a more

than adequate basis to find that the serial bankruptcy filings are part of a scheme to delay, hinder

or defraud secured creditors.

18.    11 U.S.C. § 362(d)(4) states that

> . . .after notice and a hearing, the court *shall* grant relief from the
> stay. . .
>
> (4) with respect to a stay of an act against real property under
> subsection (a), by a creditor whose claim is secured by an interest in
> such real property, *if the court finds that the filing of the petition was
> part of a scheme to delay, hinder, or defraud creditors* that involved
> either-
>     (A)  transfer of all or part ownership of, or other interest in, such
> real property *without the consent of the secured creditor or court
> approval*; or
>     (B)  multiple bankruptcy filings affecting such real property. If
> recorded in compliance with applicable State laws governing notices
> of interests or liens in real property, an order entered under paragraph
> (4) shall be binding in any other case under this title purporting to

> affect such real property filed not later than 2 years after the date of the
> entry of such order by the court, except that a debtor in a subsequent
> case under this title may move for relief from such order based upon
> changed circumstances or for good cause shown, after notice and a
> hearing.

11 U.S.C. § 362(d)(4) (emphasis added).

19.    To obtain relief under § 362(d)(4), the moving party has the burden of proving that the current filing by the Debtor "is part of a scheme, that the scheme involved the transfer of real property or multiple filings, and that the object of the scheme is to hinder, delay, [or][2] defraud" the moving party.  In re Lemma, 394 B.R. 315, 323 (Bankr. E.D.N.Y. 2008).

20.    Courts have considered several factors in determining whether multiple filings raise an inference of intent to hinder, delay or defraud secured creditors, including (1) debtor's failure to make post-petition payments on the loan, (2) debtor's failure to file the required documents and information necessary to prosecute the bankruptcy, and (3) the timing and the sequencing of the filings. *See* In re Montalvo, 416 B.R. 381, 386–87 (Bankr. E.D.N.Y. 2009).

21.    When evaluating whether to grant relief under § 362(d)(4), "the mere timing and filing of several bankruptcy cases is an adequate basis from which a court can draw a reasonable inference that the filing of a subsequent case was part of a scheme to hinder, delay, and defraud creditors." In re Blair, 2009 Bankr. LEXIS 4195, 63 Collier Bankr. Cas. 2d (MB) 513 (noting that each filing occurred on the eve or shortly before significant events effecting the property at issue and consequently granting *in rem* relief).  In addition, when debtors "have evinced no true intention to reorganize their financial affairs . . . but [r]ather they have engaged in serial filings to thwart the efforts of [a secured creditor] to exercise its lawful rights under state law . . . [t]he serial filings are evidence of bad faith, and evidence of the fact that [the debtors] are abusing the

---

[2] Prior to the 2010 amendments to the Bankruptcy Code, § 362(d)(4) relief required the filing of a petition that was part of a scheme to "hinder, delay, and defraud creditor." See Pub. L. 111-327, Sec. 2(a)(12)(C) (2010) (emphasis added).

bankruptcy process." In re Montalvo, 416 B.R. 381, 385–86 (Bankr. E.D.N.Y. 2009) (granting *in rem* relief while observing that the various cases filed between the present debtor and co-obligor were dismissed for failure to comply with filing requirements).

22.     The timing of the bankruptcy filings, raise serious questions regarding Debtor's intent to hinder, delay and defraud Movant.  The timing and sequencing of these events "allows the Court to draw a permissible inference . . . that the instant petition [is] part of a scheme of Debtor to delay, hinder, and defraud" Movant.  In re Montalvo, 416 B.R. at 387.

23.     Lastly, upon information and belief, little to no payment has been made on the Loan secured by the Property in six years.  In re Lemma, 394 B.R. 315, 325 (Bankr. E.D.N.Y. 2008) (weighing the borrower and debtor's attempts to fail to render payments to the secured creditor as part of a scheme to delay, hinder, and defraud).

24.     Based on the foregoing, Movant is entitled to relief under § 362(d)(4) in light of the numerous bankruptcy filings.  These actions constitute a scheme to hinder, delay, and defraud Movant as its attempts to exercise its state law remedies as mortgagees.

### IV.  IN THE ALTERNATIVE, RELIEF IS APPROPRIATE

### UNDER 11 U.S.C. § 362(d)(1) AND/OR (d)(2)

25.     In the event this Court finds that *in rem* relief is not warranted, relief from the automatic stay should be granted, for cause, under 11 U.S.C. § 362(d)(1) and/or (d)(2). Pursuant to the Relief from Stay Worksheet, affixed hereto as **"Exhibit C,"** the loan is contractually due and owing for 73 payments;

| PAYMENT DUE DATE | AMOUNT DUE | AMOUNT RECEIVED | AMOUNT APPLIED TO PRINCIPAL | AMOUNT APPLIED TO INTEREST | AMOUNT APPLIED TO ESCROW | LATE FEE CHARGED |
|---|---|---|---|---|---|---|
| 6/1/13-4/1/18 | $5,918.01 per month | $    0.00 | $      0.00 | $    0.00 | $    0.00 | $    0.00 |
| 5/1/18-1/1/19 | $6,084.85 per month | $    0.00 | $      0.00 | $    0.00 | $    0.00 | $    0.00 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 2/1/19-6/1/19 | $6,126.22 per month | $ | 0.00 | $ | 0.00 | $ | 0.00 | $ | 0.00 | $ | 0.00 |
| TOTALS | $434,557.34 | $ | 0.00 | $ | 0.00 | $ | 0.00 | $ | 0.00 | $ | 0.00 |

26.     As set forth in the Affidavit, as of June 5, 2019, the approximate total debt due and owing to Movant equals $490,842.05. Based upon the Debtor's Schedule D the Property has an estimated fair value of approximately $850,000.00. A copy of Schedule D is annexed hereto as **Exhibit "D."** There is a subordinate lien held by KJY Investments LLC in the amount of $198,455.04. The total secured debt owed on the property is $689,297.09. Taking into account the above encumbrances, and any applicable homestead exemption, the Debtors have no non-exempt equity in the property sought to be foreclosed. As such, relief pursuant to 11 U.S.C. § 362(d)(2) is also appropriate.

27.     The Debtors, Debtors' Attorney, the Chapter 7 Trustee and the Office of the United States Trustee have each been duly served with the within Notice of Motion, Affirmation, Exhibits and proposed In Rem Order Vacating Stay, as more fully set forth in the annexed affidavit of mailing.

*[space left intentionally blank]*

14-034475

## CONCLUSION

**WHEREFORE**, for the reasons set forth herein, the Secured Creditor respectfully requests that the Secured Creditor's Motion for *In Rem Relief* be granted pursuant to 11 U.S.C. 362(d)(4), such that any and all future filings under the Bankruptcy Code during the next two years by any person or entity with an interest in the Property, shall not operate as a stay as to Secured Creditor's enforcement of its rights in and to 74 Lee Avenue, Albertson, NY 11507, or in the alternative, for  an order pursuant to 11 U.S.C. §§ 362(d)(1) and/or (d)(2) together with any further relief that this Court deems appropriate.

Dated: July 11, 2019
Rochester, New York

/s/ *Nicole DiStasio*
Nicole DiStasio
Bankruptcy Attorney
Shapiro, DiCaro & Barak, LLC
Attorneys for Nationstar Mortgage LLC d/b/a Mr. Cooper as Servicer for U.S. Bank National Association, as Trustee for CSFB Mortgage-Backed Pass-Through Certificates, Series 2004-7
175 Mile Crossing Boulevard
Rochester, New York 14624
Telephone: (585) 247-9000
Fax: (585) 247-7380

14-034475

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
CENTRAL ISLIP DIVISION
IN RE

    O HYONG LEE AND YOUNG HEE LEE

                DEBTORS

HEARING DATE:  September 9, 2019
HEARING TIME:  9:30 a.m.
HEARING PLACE:  Central Islip

CHAPTER 7

CASE NO. 8-19-73985-reg

JUDGE: Robert E. Grossman

## ORDER PURSUANT TO 11 U.S.C. § 362(d)(4)
## MODIFYING THE AUTOMATIC STAY IMPOSED BY 11 U.S.C. § 362(a)

Upon the motion, dated July 11, 2019 (the "Motion"), of Nationstar Mortgage LLC d/b/a Mr. Cooper as servicer for U.S. Bank National Association, as Trustee for CSFB Mortgage-Backed Pass-Through Certificates, Series 2004-7, (with any subsequent successor or assign, the "Secured Creditor"), for an order, pursuant to 11 U.S.C. § 362(d)(4), for *in rem* relief from the automatic stay imposed in subsequent cases under 11 U.S.C. § 362(a), such that any and all future filings under the Bankruptcy Code during the next two years by the Debtors  herein, O Hyong Lee and Young Hee Lee or any other person or entity with an interest in the Property shall not operate as a stay as to Movant's enforcement of its rights in and to 74 Lee Avenue, Albertson, NY 11507 (the "Collateral") and after due and sufficient service and notice, the Court having held a hearing on the Motion on September 9, 2019 and no opposition having been submitted; and, after due deliberation, the Court having determined that the filing of the Debtors' bankruptcy petition was part of a scheme to delay, hinder, and defraud creditors that has involved multiple bankruptcy filings by the Debtor and Co-Debtor and affecting the Property; and good and sufficient cause appearing, including the failure of the Debtor and Co-Debtor to perform their duties as a debtor under the Bankruptcy Code in good faith in multiple bankruptcy cases affecting the Property, it is

14-034475

**ORDERED** that, the automatic stay, pursuant to 11 U.S.C. § 362(a), is hereby vacated for cause pursuant to 11 U.S.C. § 362(d) as to, Nationstar Mortgage LLC d/b/a Mr. Cooper as servicer for U.S. Bank National Association, as Trustee for CSFB Mortgage-Backed Pass-Through Certificates, Series 2004-7 its agents, assigns or successors-in-interest, may take any and all actions under applicable state law necessary to continue its foreclosure proceedings on premises known as 74 Lee Avenue, Albertson, NY 11507 ( "Property") without further application to this Court; and it is further

**ORDERED** that, under 11 U.S.C. § 362(d)(4), and provided that this order is recorded in conformity therewith, this order terminating the automatic stay under 11 U.S.C. § 362(a) as to Secured Creditor's interest in the Property shall be binding in any other case filed under the Bankruptcy Code purporting to affect the Property that is filed not later than two years after the date of this order, such that the automatic stay under 11 U.S.C. § 362(a) shall not apply to Secured Creditor's interest in the Property.

**ORDERED** that in the event this case is converted to a case under any other chapter of the U.S. Bankruptcy Code, this Order will remain in full force and effect; and it is further

**ORDERED** that the Movant shall promptly report and turn over to the Chapter 7 Trustee any surplus monies realized by any sale of the Property.

14-034475

**SHAPIRO, DICARO & BARAK, LLC**
Attorneys for Nationstar Mortgage LLC d/b/a Mr. Cooper
as Servicer for U.S. Bank National Association, as Trustee
for CSFB Mortgage-Backed Pass-Through Certificates,
Series 2004-7
175 Mile Crossing Boulevard
Rochester, New York 14624
Telephone: (585) 247-9000, Fax: (585) 247-7380
**Nicole DiStasio**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
CENTRAL ISLIP DIVISION

|  |  |
|---|---|
| IN RE | CHAPTER 7 |
| O HYONG LEE AND YOUNG HEE LEE | CASE NO. 8-19-73985-reg |
| DEBTORS | |

<u>**AFFIDAVIT OF SERVICE BY MAIL**</u>

|  |  |
|---|---|
| STATE OF NEW YORK | ) |
|  | )ss: |
| COUNTY OF SUFFOLK | ) |

I, Alicia McNamee, being sworn, say, I am not a party to this action; I am over 18 years of age, I reside in Suffolk County, New York.

On July 11, 2019 I served the within Notice of Motion, Motion in Support, Exhibits and Proposed Order Granting Relief from Automatic Stay upon:

TO:    Debtors
        O Hyong Lee
        74 Lee Avenue
        Albertson, NY 11507

        Young Hee Lee
        74 Lee Avenue
        Albertson, NY 11507

14-034475

Attorney for Debtor
Sungchan Cho
35-71 162nd Street
1st Floor
Flushing, NY 11358

Trustee
R. Kenneth Barnard
3305 Jerusalem Ave
Suite 215
Wantagh, NY 11793

U.S. Trustee
Long Island Federal Courthouse
560 Federal Plaza - Room 560
Central Islip, NY 11722

Attorneys for Creditor: KJY Investment LLC
Tae Hyun Whang, Esq.
Law Offices of Tae H. Whang, LLC
185 Bridge Plaza North, Suite 201
Fort Lee, NJ 07024

at the addresses designated by the foregoing individuals for that purpose by depositing a true

copy of same enclosed in a postpaid, properly addressed wrapper, in an official depository under

the exclusive care and custody of the United States Postal Service within the State of New York.

14-034475

Date July 11, 2019

_Alicia McNamee_
Alicia McNamee
Bankruptcy Paralegal
Shapiro, DiCaro & Barak, LLC
Attorneys for Nationstar Mortgage LLC
d/b/a Mr. Cooper as Servicer for U.S. Bank
National Association, as Trustee for CSFB
Mortgage-Backed Pass-Through Certificates,
Series 2004-7
One Huntington Quadrangle, Suite 3N05
Melville, NY  11747
Telephone: (631) 844-9611
Fax: (631) 844-9525

Sworn to before me this
11th day of July_____, 2019

_Deborah Callahan_
Notary Public

DEBORAH CALLAHAN
Notary Public, State of New York
Registration No. 01-CA6278202
Qualified in Suffolk County
Commission Expires___3/18___20 21

14-034475

**EXHIBIT "A"**

Prepared by: CHRISTOPHER DONNELLY

# NOTE

# ORIGINAL

AUGUST 17, 2004       ROCKVILLE CENTRE       NEW YORK
[Date]       [City]       [State]

74 LEE AVE, ALBERTSON, NY 11507-1624
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 528,500.00       (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
COUNTRYWIDE HOME LOANS, INC.
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    5.750 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   FIRST       day of each month beginning on
OCTOBER 01, 2004    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   SEPTEMBER 01, 2019  , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 660694, Dallas, TX 75266-0694
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 4,388.72

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

NEW YORK FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP MORTGAGE FORMS - (800)521-7291

Initials: O H L
      Y H L

-5N(NY) (0005).01 CHL (09/02)(d)       Page 1 of 2       Form 3233 1/01




**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of    FIFTEEN    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    2.000    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
O HYONG LEE                      -Borrower        YOUNG HEE LEE                   -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower        **ORIGINAL**                   -Borrower

*[Sign Original Only]*

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.

BY

David A. Spector
Managing Director





NASSAU COUNTY CLERK'S OFFICE
ENDORSEMENT COVER PAGE

Recorded Date: 08-30-2004          Record and Return To:
Recorded Time: 11:18:31 a          COUNTRYWIDE HOME LOANS INC
                                   MS SV-79 DOCUMENT PROCESSING
    Liber Book: M  27497           PO BOX 10423
    Pages From:      233           VAN NUYS, CA  91410-0423
          To:       247

       Control
       Number:   818
       Ref #: CV  068190
    Doc Type: M01  MORTGAGE

Location:                  Section Block    Lot    Unit
N. HEMPSTEAD (2822)        0009    00649-00 00013

Consideration Amount:        528,500.00

                                Taxes Total        5,260.00
                           Recording Totals            80.00
TMS001                        Total Payment        5,340.00

    THIS PAGE IS NOW PART OF THE INSTRUMENT AND SHOULD NOT BE REMOVED
                        KAREN V. MURPHY
                        COUNTY CLERK

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O. Box 10423
Van Nuys, CA 91410-0423

Prepared By:
CHRISTOPHER DONNELLY



S  9
B  649
L  13

———————— [Space Above This Line For Recording Data] ————————

# MORTGAGE

## WORDS USED OFTEN IN THIS DOCUMENT

(A) **"Security Instrument."** This document, which is dated  AUGUST 17, 2004  , together with all
Riders to this document, will be called the "Security Instrument."

(B) **"Borrower."**

O HYONG LEE, AND YOUNG HEE LEE

whose address is
221-51 HORACE HARDING EX, OAKLAND GARDENS, NY 11364
sometimes will be called "Borrower" and sometimes simply "I" or "me."

(C) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under
the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel.
(888) 679-MERS. **FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE
MORTGAGEE OF RECORD.**

(D) **"Lender."**

COUNTRYWIDE HOME LOANS, INC.

will be called "Lender." Lender is a
CORPORATION                                                                     which exists
under the laws of NEW YORK                          . Lender's address is
P.O. Box .660694, Dallas, TX 75266-0694

(E) "Note." The note signed by Borrower and dated AUGUST 17, 2004  , will be called the "Note."
The Note shows that I owe Lender
FIVE HUNDRED TWENTY EIGHT THOUSAND FIVE HUNDRED and 00/100

Dollars (U.S. $ 528,500.00         ) plus interest and other amounts that may be payable. I have
promised to pay this debt in Periodic Payments and to pay the debt in full by  SEPTEMBER 01, 2019 .

NEW YORK- Single Family -Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
                                            Page 1 of 13
VMP -6A(NY) (0005).04 CHL (10/02).01(d)  VMP MORTGAGE FORMS - (800)521-7291 .          Initials:  O  H  L
CONV/VA                                                                              Form 3033 1/01
                                                                                     Y  H  L

**(F) "Property."** The property that is described below in the section titled "Description of the Property," will be called the "Property."

THE PREMISES ARE IMPROVED OR ARE TO BE IMPROVED BY A ONE OR TWO FAMILY RESIDENCE OR DWELLING ONLY.

**(G) "Loan."** The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Sums Secured."** The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

**(I) "Riders."** All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |

EXHIBIT A.

**(J) "Applicable Law."** All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

**(K) "Community Association Dues, Fees, and Assessments."** All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

**(L) "Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."

**(N) "Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

**(O) "Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

**(Q) "RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

Initials: O H L
Y H L

-6A(NY) (0005).04    CHL (10/02).01          Page 2 of 13                     Form 3033 1/01

**DESCRIPTION OF THE PROPERTY**

I give Lender rights in the Property described in (A) through (G) below:

(A) The Property which is located at

74 LEE AVE                                                                                    [Street]
ALBERTSON                                    [City, Town or Village], New York
11507-1624 [Zip Code]. This Property is in    NASSAU                                County.

It has the following legal description:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

**COVENANTS**

I promise and I agree with Lender as follows:

**1. Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either

Initials: _O.H.L__  YHL

apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations.**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.



I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(b) Lender's Obligations.**

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

**(c) Adjustments to the Escrow Funds.**

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4. Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review,

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or

Initials: O H C
Form 3033 1/01
Y H L

amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

**(a) Maintenance and Protection of the Property.**

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

Initials: *O H L*
*Y H L*



**(b) Lender's Inspection of Property.**

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Initials: O H L

Y H L

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

**11. Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

Initials: O H L
Y H L



All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

**(a) Borrower's Obligations.**

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

**(b) Lender's Rights.**

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials: 

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of this Security Instrument; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Initials: _O HL_

_Y HL_

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS**
I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."**

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

Initials: _O H L_
_Y H L_



(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. Borrower's Statement Regarding the Property [check box as applicable].

[X] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.


BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____     _O_(Hyong_Lee_____ (Seal)
                               O HYONG LEE                -Borrower

_____     _Young_Hee_Lee_____ (Seal)
                               YOUNG HEE LEE              -Borrower

                               _____ (Seal)
                                                          -Borrower

                               _____ (Seal)
                                                          -Borrower



**STATE OF NEW YORK,** *Nassau*                    County ss:

On the 17ᵗʰ day of August, 2004   before me, the undersigned, a notary
public in and for said state, personally appeared

*O Hyong Lee  and
Young Hee Lee*

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the
person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

Tax Map Information:

MICHAEL SHVARTS
Notary Public, State of New York
No. 01SH6096514
Qualified in Richmond County  2007
Commission Expires July 28, ____

-6A(NY) (0005).04    CHL (10/02).01          Page 13 of 13                    Form 3033 1/01

NC CLERK



**NASSAU COUNTY CLERK'S OFFICE**
**ENDORSEMENT COVER PAGE**

Recorded Date: 10-03-2013
Recorded Time: 2:26:05 p

Libar Book: M 39214
Pages From: 493
To: 495

Control
Number: 1507
Ref #:
Doc Type: M23  ASSIGN MORTGAGE

Refers to: Book: M 27497 Page: 233

Record and Return To:
CORELOGIC
MAIL STOP: ASGN
1 CORELOGIC DRIVE
WESTLAKE, TX  76262-9823

Location:
N. HEMPSTEAD (2822)

Section  Block      Lot      Unit
0009     00649-00   00013

Taxes Total              .00
Recording Totals      205.00
Total Payment         205.00

XAV001

THIS PAGE IS NOW PART OF THE INSTRUMENT AND SHOULD NOT BE REMOVED
MAUREEN O'CONNELL
COUNTY CLERK





**ASSIGNMENT OF MORTGAGE**

For Value Received, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (herein "Assignor"), whose address is 1901 E. Voorhees Street, Suite C, Danville, IL 61834 and P.O. Box 2026, Flint, MI 48501-2026, AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC., whose address is 1 MAIN STREET, VAN NUYS, CA 91410-0423, and its successors and assigns hereby assign and transfer to U.S. BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE HOLDERS OF CSFB 2004-7 TRUST (herein "Assignee"), whose address is 8863 OLD ANNAPOLIS RD, COLUMBIA, MD 21045, and its successors and assigns all its right, title, and interest in and to a certain Mortgage described below.

Original Lender:          MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS
                          NOMINEE FOR COUNTRYWIDE HOME LOANS, INC.
Made By:                  O HYONG LEE, AND YOUNG HEE LEE
Date of Mortgage:         8/17/2004
Original Loan Amount:     $328,500.00
Section: 9    Lot: 13     Block: 645     Unit: NA
Recorded in Nassau County, NY on: 8/30/2004, book M 27497, page 233 and instrument number 818

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

This Mortgage has not been assigned unless otherwise stated below:

                          MORTGAGE ELECTRONIC REGISTRATION
                          SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE
                          HOME LOANS, INC.

                          By: _____
                          _____
                          Martha Munoz-Vice President
                          Date: _____  8-29-13

State of California
County of Ventura

On  AUG 29 2013    before me,    Carmen L. Morse    , Notary Public, personally
appeared    Martha Munoz    , who proved to me on the basis of satisfactory evidence to be
the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public        Carmen L / Morse        (Seal)
My Commission Expires:    October 18, 2015

EXHIBIT "B"

At Part 20 of the Supreme Court of the
State of New York held in and for the
County of Nassau, at the Courthouse
thereof, at Mineola, New York, on
DEC 1 3 2016, 2016.

*mot #3*

Present: Hon. Thomas A. Adams, J.S.C.

U.S. Bank National Association, as Trustee for CSFB
Mortgage-Backed Pass-Through Certificates, Series 2004-7,

                         Plaintiff,

     -against-

O Lee a/k/a O Hyong Lee a/k/a O H. Lee a/k/a Oh Lee;
Young Lee a/k/a Young Hee Lee a/k/a Young H. Lee; KJY
Investment, LLC; Ling Lee; Sung Lee,
                   Defendants.

**JUDGMENT OF
FORECLOSURE AND
SALE**
Index No. 14-008069

Premises:
74 Lee Avenue
Albertson, NY 11507
**Section 9 Block 649 Lot 13**

    **ON** the Summons, Complaint and Notice of Pendency duly filed in this action on 19th

day of August, 2014, and all proceedings thereon; and on reading and filing the Notice of Motion

dated September 20, 2016 and Affirmation of Regularity of Elizabeth A. Clarke, Esq. dated

September 20, 2016, with exhibits annexed thereto including an Affidavit of Merit and

Amounts Due of Trey Cook, Document Execution Specialist of Nationstar Mortgage LLC, the

mortgage loan servicing agent & attorney-in-fact of the Plaintiff, U.S. Bank National

Association, as Trustee for CSFB Mortgage-Backed Pass-Through Certificates, Series 2004-7,

which is a duly authorized corporation, dated January 14, 2016, showing that all Defendant(s)

were duly served pursuant to the laws of the State of New York with a copy of the Summons in

this action, or have voluntarily appeared by their respective attorneys; and on the proof of service

upon and appearance, if any, by the Defendant(s) herein heretofore filed in this action; and

stating that more than the legally required number of days have elapsed since said Defendant(s)

were so served; and that none of the Defendant(s) have served an answer to said Complaint, nor

has their time to do so been extended; except for Defendant(s), O Lee a/k/a O Hyong Lee a/k/a O

H, Lee a/k/a Oh Lee and Young Lee a/k/a Young Hee Lee a/k/a Young H. Lee, and
*Defendant K J Y Investment LLC filed a Notice of Appearance*

ON the Order Granting Summary Judgment signed and entered on November 30, 2015,

appointing Jordan Hoffman, Esq. as Referee in this action to ascertain and compute the amount

due, and to examine the Plaintiff or its agent on oath as to the allegations of the complaint, and to

examine and report whether the mortgaged premises should be sold in one or more parcels;

AND on reading and filing of the oath and report of the aforesaid Referee sworn to and

dated February 11, 2016, it appears that the sum of $368,063.64 was due the Plaintiff, as of

January 11, 2016, plus a per diem interest for every day thereafter, on the date of said Report and

that the mortgaged premises should be sold in one parcel.

NOW, on motion of Shapiro, DiCaro & Barak, LLC, the attorneys for the Plaintiff, it is

ORDERED, that the motion is granted without opposition and it is further

ORDERED, ADJUDGED AND DECREED that the report of Jordan Hoffman, Esq.

dated February 11, 2016, be, and the same is hereby, in all respects, ratified and confirmed; and it

is further

ORDERED, ADJUDGED AND DECREED that by accepting this appointment the

referee certifies that they are in compliance with Part 36 of the Rules of the Chief Judge (22

NYCRR Part 36), including, but not limited to, section 36.2(c) ("Disqualifications from

appointment"), and section 36.2 (d) ("Limitations on appointments based upon compensation");

and it is further

ORDERED, ADJUDGED, AND DECREED that the mortgaged premises (Section 9

Block 649 Lot 13) as further described in the complaint in this action be sold at a public auction

on a Tuesday at 11:30 am in the Calendar Control Part (CCP) Courtroom, 100 Supreme Court

Drive, Mineola, NY 11501 by and under the direction of Jordan Hoffman, Esq., Fiduciary Number 663837, who is hereby appointed Referee for that purpose; that the said Referee give public notice of the time and place of such sale according to law and the practice of this Court, in an official publication, to wit: MINEOLA AMERICAN 132 EAST 2ᴺᴰ ST, MINEOLA .; or in any publication in compliance with RPAPL §231; and it is further

ORDERED, ADJUDGED, AND DECREED that the Plaintiff or any other parties to this action may become the purchaser or purchasers at such sale; that in case the plaintiff shall become the purchaser at the said sale, it shall not be required to make any deposit thereon, and it is further

ORDERED, ADJUDGED AND DECREED, that the Referee at the time of the sale may accept a written bid from the Plaintiff or Plaintiff's attorneys, just as though the Plaintiff were physically present to submit said bid; and it is further

ORDERED, ADJUDGED, AND DECREED that said Referee execute to the purchaser or purchasers on such sale a deed of the premises sold; that in the event a party other than the plaintiff becomes the purchaser or purchasers at such sale they shall be required to tender a deposit of 10% of the purchase price in certified funds and that all deed stamps, transfer taxes and recording fees, if any, shall be paid by the purchaser, and the closing of title shall be had thirty days after such sale unless otherwise stipulated by all parties to the sale and if such closing is required, and the Referee seeks and is awarded additional fees for said closing, those fees shall be paid by purchaser; and it is further,

ORDERED, ADJUDGED AND DECREED, that said Referee on receiving the proceeds of the sale, shall forthwith pay therefrom, in accordance with their priority according to law, the taxes, assessments, sewer rents or water rates which are or may become liens on the

premises at the time of sale with such interest or penalties which may have lawfully accrued thereon to the date of payment; and it is further,

ORDERED, ADJUDGED AND DECREED, that said Referee then take the remaining proceeds of sale and deposit them in his own name as Referee in his IOLA account or other

separate account at          VALLEY NATIONAL BANK
                             222 OLD COUNTRY ROAD          ; and in
                             MINEOLA, NY 11501

addition to executing a deed to the purchaser(s) of the premises sold, shall thereafter make the following payments and his checks drawn for that purpose;

FIRST:      That statutory fees of the Referee in the sum of $ 250 pursuant to CPLR 8003(b)

SECOND:     The expenses of sale and the advertising expenses as shown on the bills presented and certified by said Referee to be correct, duplicate copies of which shall be annexed to the report of sale and filed with said Depository and Clerk of this Court.

THIRD:      Said Referee shall also pay to the plaintiff or plaintiff's attorney, the sum of $ 1780 00 to be determined by the Clerk and adjudged to the Plaintiff for costs and disbursements in this action or as taxed by the Clerk on the Costs of Plaintiff and inserted therein, with interest thereon from the date hereof; together with reasonable attorneys' fees in the sum of $ 2500 00 as provided for in paragraph 22 of the mortgage, and also the sum of $368,063.64 the said amount so reported due as aforesaid, together with contractual interest thereon from January 11, 2016, the date interest was calculated to in said report to the date of entry of the Judgment and legal interest thereafter, or so much thereof as the purchase money of the mortgaged premises will pay of the same, together with any advances

necessarily paid by the Plaintiff for taxes, fire insurance, principal and interest to prior mortgages to preserve and or maintain the premises not previously included in any computations, said expenses being substantiated by proper receipts therefore.

**FOURTH:**   If such Referee intends to apply for a further allowance for fees, the Referee may leave upon deposit such amount as will cover such additional allowance to await the further order of this Court thereon after application duly made.

That in case the plaintiff be the purchaser of said mortgaged premises at said sale, or in the event that the rights of the purchasers at said sale and the terms of sale under the judgment shall be assigned to and be acquired by the plaintiff, and a valid assignment thereof filed with said Referee, said Referee shall not require the plaintiff to pay in cash the entire amount bid at said sale, but shall execute and deliver to the plaintiff or its assignee, a deed or deeds of the premises sold upon the payment to said Referee of the amount specified above in items marked "**FIRST**" and "**SECOND**" and the amounts of the aforesaid taxes, assessments, sewer rents and water rates, with interest and penalties thereon, or in lieu of the payment of said last mentioned amounts, upon filing with said Referee receipts of the proper municipal authorities showing payment thereof; that the balance of the amount bid, after deducting therefrom the aforesaid amounts paid by the plaintiff for Referee's fees, advertising expenses, taxes, assessments, sewer rents and water rates shall be allowed to the Plaintiff and applied by said Referee upon the amounts due to the plaintiff as specified in item marked "**THIRD**"; that if after so applying the balance of the amount bid, there shall be a surplus over and above the said amounts due to the plaintiff, the plaintiff shall pay to the said Referee, upon delivery to plaintiff of said Referee's

deed, the amount of such surplus; that said Referee on receiving said several amounts from the plaintiff shall forthwith pay therefrom said taxes, assessments, sewer rents, water rates, with interest and penalties thereon, unless the same have already been paid, and shall then deposit the balance.

The said Referee shall take the receipt of the Plaintiff or the attorneys for the Plaintiff for the amounts paid as directed in item "THIRD" above, and file it with the report of sale; that surplus monies be deposited, if any, with the Nassau County Treasurer within five days after the same shall be received and be ascertainable, to the credit of this action, to be withdrawn only on an order of this Court, signed by a Justice of this Court. The Referee shall make the report of such sale under oath showing the disposition of the proceeds of the sale and accompanied by the vouchers of the persons to whom payments were made, and shall file it with the Nassau County Clerk within thirty days after completing the sale and executing the proper conveyance to the purchaser and that if the proceeds of such sale be insufficient to pay the amount reported due to the Plaintiff with interest and costs as aforesaid, the Plaintiff shall recover from the Defendant(s), O Hyong Lee and Young Hee Lee, unless discharged in bankruptcy, the whole deficiency or so much thereof as this Court may determine to be just and equitable of the residue of the mortgage debt remaining unsatisfied after a sale of the mortgaged premises and the application of the proceeds thereof, provided a motion for a deficiency judgment shall be made as prescribed by §1371 of the Real Property Actions and Proceedings Law within the time limited therein, and the amount thereof if determined and awarded by an Order of this Court as provided for in said section; and it is further

**ORDERED, ADJUDGED AND DECREED,** that the purchaser(s) at said sale be let into possession on production or delivery of the Referee's deed or deeds; and it is further



ORDERED, ADJUDGED AND DECREED that each and all of the Defendant(s) in this action and all persons claiming under them, or any or either of them, after the filing of such notice of pendency of this action, be and they are hereby forever barred and foreclosed of all right, claim, lien, title, interest, and equity of redemption in said mortgaged premises and each and every part thereof; and it is further

ORDERED, ADJUDGED AND DECREED, that said premises is to be sold in one parcel in "as is" physical order and condition, subject to any state of facts that an inspection of the premises would disclose; any state of facts than an accurate survey of the premises would show, any covenants, restrictions, declarations, reservations, easements, rights of way and public utility agreement of record, if any; any building and zoning ordinances of the municipality in which the mortgaged premises is located and possible violations of same; any rights of tenants or persons in possession of the subject premises; prior lien(s) of record, if any, except those liens addressed in §1354 of the Real Property Actions and Proceeding Law; any equity of redemption of the UNITED STATES OF AMERICA to redeem the premises within 120 days from date of sale; and it is further

~~ORDERED, that pursuant to CPLR 8003(a) (the statutory fee of $50.00) (in the discretion of the court, a fee of $_____), shall be paid to the Referee for the computation stage and upon the filing of his/her report; and it is further~~

ORDERED that pursuant to CPLR 8003(b), absent application to the court, further court order, and compliance with Part 36 of the Rules of the Chief Judge, the Referee shall not demand, accept or receive more than the statutory $250 otherwise payable to the Referee for the foreclosure sale stage, regardless of adjournment, delay, or stay of the sale; and it is further

ORDERED, that the Referee is prohibited from accepting or retaining any funds for himself/herself of paying funds to him or herself without compliance with Part 36 of the Rules of the Chief Administrative Judge

ORDERED, that the Referee appointed to sell herein be served with a signed copy of this Judgment of Foreclosure and Sale with Notice of Entry; and it is further

ORDERED, that the Referee must submit a copy of the Notice of Sale to the Motion Support Office of the Supreme Court Room 152 at least ten (10) days prior to the date of the auction.

Said premises commonly known as 74 Lee Avenue, Albertson, NY 11507. A description of said mortgaged premises is annexed hereto and made a part hereof as Schedule A.

No sale of the premises will be scheduled, and the Court will not place the above captioned matter on the calendar for auction, nor will the court accept a Notice of Sale, unless and until an "Affidavit in Support of Residential Mortgage Foreclosure" is submitted by the plaintiff stating that all Federal, State and Local Statutes, Laws, rules and Regulations, Mandates and Executive Orders with respect to Mortgage Foreclosure, Foreclosure Prevention and Home Retention as well as all conditions precedent to the commencement of an action to foreclosure and residential mortgage have been complied with in this instant action.

Date: _____DEC 1 3 2016_

ENTER,

Attorney certification pursuant to 22NYCRR §130-1.1-a
is affixed to inside cover.

Hon. Thomas A. Adams, J.S.C.

ENTERED

DEC 2 2 2016

NASSAU COUNTY
COUNTY CLERK'S OFFICE





**SOLUTION**STAR

### SCHEDULE A

#### DESCRIPTION OF MORTGAGED PREMISES

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being at Albertson, Town of North Hempstead, Nassau County and State of New York, known and designated as Lot 13, Block 649 on Map of Cherry Tree Woods at Albertson, Town of North Hempstead, Nassau County, New York filed in the Office of the Clerk of Nassau County on August 24, 1964 Number 7812, which lot is more particularly bounded and described according to said map as follows:

BEGINNING at a point on the southerly side of Lee Avenue distant 668.07 feet east, as measured along same, from the northeasterly end of arc connecting the southerly side of Lee Avenue with the easterly side of Searingtown Road;

THENCE North 1 degree 54 minutes 44 seconds East along the easterly side of Lee Avenue as the same turns, a distance of 38.55 feet;

THENCE South 83 degrees 50 minutes 36 seconds East 100.17 feet;

THENCE South 2 degrees 01 minutes 36 seconds West 110.56 feet;

THENCE North 49 degrees 32 minutes 06 seconds West 127.45 feet to the southerly side of Lee Avenue at the point or place of BEGINNING.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

| | |
|---|---|
| U.S. Bank National Association, as Trustee for CSFB Mortgage-Backed Pass-Through Certificates, Series 2004-7, | **COSTS OF PLAINTIFF** |
| Plaintiff, | Index No. 14-008069 |
| -against- | |
| O Hyong Lee and Young Hee Lee, et al, | |
| Defendants. | |

**COSTS OF PLAINTIFF:**

| | |
|---|---|
| Costs before note of issue | $200.00 |
| CPLR Sec. 8201 subd.1 | |
| Allowance by statute | 150.00 |
| CPLR Sec. 8302 (a) (b) | |
| Additional allowance | 50.00 |
| CPLR Sec. 8302 (d) | |
| Motion costs | 0.00 |
| CPLR Sec 8302 | |
| Costs: | **$400.00** |

*COSTS ___ ADJUSTED AT $ 1780⁰⁰ THIS 22 DAY OF Dec 20 16   Maureen O'Connell  CLERK, NASSAU CO*

**DISBURSEMENTS:**

| | |
|---|---|
| Fee for index number | $400.00 |
| CPLR Sec. 8018 (a) | |
| Referee's fee | 500.00 |
| CPLR Sec. 8301(a)1 | |
| Clerk's fee, filing notice of pend. or attach. | 195.00 |
| CPLR Sec. 8021 (a)(10) | |
| Paid for searches | 0.00 |
| CPLR Sec. 8301(a)1 | |
| Serving copy summons & complaint | ~~685.30~~  →  100⁰⁰ |
| CPLR Sec. 8011(c)1 | |
| Request for Judicial Intervention | 95.00 |
| CPLR Sec. 8020(a) | |
| Fees for Submission of Judgment and Order Granting Summary Judgment | 90.00 |
| CPLR Sec. 8020(a) | |
| Fees for publication | 0.00 |
| CPLR sec. 8301(a)3 | |
| Disbursements: | ~~1,965.30~~  1380⁰⁰ |
| Total Costs and Disbursements: | ~~$2,365.30~~  1780⁰⁰ |

Elizabeth A. Clarke, Esq.
Associate Attorney
SHAPIRO, DICARO & BARAK, LLC
Attorneys for Plaintiff
175 Mile Crossing Boulevard
Rochester, New York 14624
(585) 247-9000
Fax: (585) 247-7380



## ATTORNEY'S AFFIRMATION

I, Elizabeth A. Clarke, an attorney admitted to the practice of law in the State of New York, hereby affirm pursuant to CPLR §2106 that: Shapiro, DiCaro & Barak, LLC, are the attorneys of record for the Plaintiff in this action; the foregoing disbursements have been or will be necessarily made or incurred in this action and are reasonable in amount; and the copies of the documents or papers as charged herein were actually and necessarily obtained for use.

Dated: September 20, 2016

Elizabeth A. Clarke, Esq.
Associate Attorney
SHAPIRO, DICARO & BARAK, LLC
Attorneys for Plaintiff
175 Mile Crossing Boulevard
Rochester, New York 14624
(585) 247-9000
Fax: (585) 247-7380

## ATTORNEY'S CERTIFICATION

I, Elizabeth A. Clarke, am an attorney duly admitted to the practice of law in the State of New York. I am an associate of Shapiro, DiCaro & Barak, LLC, the attorneys for the Plaintiff, U.S. Bank National Association, as Trustee for CSFB Mortgage-Backed Pass-Through Certificates, Series 2004-7, in the above captioned civil action.

I HEREBY CERTIFY, pursuant to §130-1.1-a of the Rules of the Chief Administrator (22 NYCRR), to the best of my knowledge, information and belief, formed after an inquiry reasonable under the circumstances, that the presentation of the papers in this action checked below, or the contentions therein, are not frivolous as defined in subsection (c) of §130-1.1 of the Rules of the Chief Administrator (22NYCRR):

{ }    Summons & Complaint

{ }    Answer or Reply

{ }    Attorney's Affirmations

{X}    Other: <u>Judgment of Foreclosure and Sale</u>

Dated: September 20, 2016

Elizabeth A. Clarke, Esq.
Associate Attorney
SHAPIRO, DICARO & BARAK, LLC
Attorneys for Plaintiff
175 Mile Crossing Boulevard
Rochester, New York 14624
(585) 247-9000
Fax: (585) 247-7380

Foreclosure Settlement Conference Held



SUPREME COURT
OF THE STATE OF NEW YORK
COUNTY OF NASSAU

INDEX NO. 14-008069

U.S. Bank National Association, as
Trustee for CSFB Mortgage-Backed Pass-
Through Certificates, Series 2004-7,

Plaintiff,

-vs-

O Hyong Lee and Young Hee Lee, et al.,

Defendant(s).

JUDGMENT OF FORECLOSURE
AND SALE

SHAPIRO, DICARO & BARAK, LLC
175 MILE CROSSING BOULEVARD
ROCHESTER, NEW YORK 14624
(585) 247-9000

NASSAU INDEX #
FILED

DEC 2 2 2016

COUNTY CLERK OF
NASSAU COUNTY

**EXHIBIT "C"**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
CENTRAL ISLIP DIVISION

IN RE

O HYONG LEE AND YOUNG HEE LEE          CHAPTER 7

                                       CASE NO. 8-19-73985-reg
              DEBTORS
                                       JUDGE: Robert E. Grossman

RELIEF FROM STAY – REAL ESTATE AND
COOPERATIVE APARTMENTS

## BACKGROUND INFORMATION

1. ADDRESS OF REAL PROPERTY OR COOPERATIVE APARTMENT:  74 Lee Avenue, Albertson, NY 11507

2. LENDER NAME:  U.S. Bank National Association, as Trustee for CSFB Mortgage-Backed Pass-Through Certificates, Series 2004-7

3. MORTGAGE DATE:  08/17/2004

4. POST-PETITION PAYMENT ADDRESS:
   Nationstar Mortgage LLC d/b/a Mr. Cooper, PO Box 619094, Dallas, TX 75261-9741

## DEBT AND VALUE REPRESENTATIONS

5. TOTAL PRE-PETITION AND POST-PETITION INDEBTEDNESS OF DEBTOR(S) TO MOVANT AS OF THE MOTION FILING DATE: $490,842.05
(*THIS MAY NOT BE RELIED UPON AS A "PAYOFF" QUOTATION.*)

6. MOVANT'S ESTIMATED MARKET VALUE OF THE REAL PROPERTY OR COOPERATIVE APARTMENT AS OF THE MOTION FILING DATE: $850,000.00

7. SOURCE OF ESTIMATED MARKET VALUE:  Debtor's Schedule D

14-034475

## STATUS OF THE DEBT AS OF THE PAYOFF DATE

8. DEBTOR(S)'S INDEBTEDNESS TO MOVANT AS OF THE PAYOFF DATE:

    A. TOTAL:          $ _____ 490,842.05

    B. PRINCIPAL:      $ _____ 278,990.90

    C. INTEREST:       $ _____ 97,764.39

    D. ESCROW (TAXES AND INSURANCE):  $ _____ 113,201.46

    E. FORCED PLACED INSURANCE EXPENDED BY MOVANT: $ _____ 0.00

    F. PRE-PETITION ATTORNEYS' FEES CHARGED TO DEBTOR(S): $ _____ 0.00

    G. PRE-PETITION LATE FEES CHARGED TO DEBTOR(S): $ _____ 0.00

9. CONTRACT INTEREST RATE: 5.75%

  *(IF THE INTEREST RATE HAS CHANGED, LIST THE RATE(S) AND DATE(S) THAT EACH RATE WAS IN EFFECT ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM. STATE THE EXHIBIT NUMBER HERE: _____.)*

10. OTHER PRE-PETITION FEES, CHARGES OR AMOUNTS CHARGED TO DEBTOR(S)'S ACCOUNT AND NOT LISTED ABOVE:

Fees & Costs Due (Lump Sum): $885.30

*(IF ADDITIONAL SPACE IS REQUIRED, LIST THE AMOUNT(S) ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM. STATE THE EXHIBIT NUMBER HERE: _____.)*

## AMOUNT OF DEFAULT AS OF THE MOTION FILING DATE

11. DATE OF RECEIPT OF LAST PAYMENT: 05/10/2013

12. NUMBER OF PAYMENTS DUE TO MOTION FILING DATE: 73 PAYMENTS.

14-034475

13. PAYMENTS IN DEFAULT:

| PAYMENT DUE DATE | AMOUNT DUE | AMOUNT RECEIVED | AMOUNT APPLIED TO PRINCIPAL | AMOUNT APPLIED TO INTEREST | AMOUNT APPLIED TO ESCROW | LATE FEE CHARGED |
|---|---|---|---|---|---|---|
| 6/1/13-4/1/18 | $5,918.01 per month | $     0.00 | $     0.00 | $     0.00 | $     0.00 | $     0.00 |
| 5/1/18-1/1/19 | $6,084.85 per month | $     0.00 | $     0.00 | $     0.00 | $     0.00 | $     0.00 |
| 2/1/19-6/1/19 | $6,126.22 per month | $     0.00 | $     0.00 | $     0.00 | $     0.00 | $     0.00 |
| TOTALS | $434,557.34 | $     0.00 | $     0.00 | $     0.00 | $     0.00 | $     0.00 |

14. OTHER POST-PETITION FEES CHARGED TO DEBTOR(S):

    A. TOTAL:        $_____0.00

    B. ATTORNEY'S FEES IN CONNECTION WITH THIS MOTION:        $_____0.00

    C. FILING FEE IN CONNECTION WITH THIS MOTION:        $_____0.00

    D. OTHER POST-PETITION ATTORNEYS' FEES:        $_____0.00

    E. POST-PETITION INSPECTION FEES:        $_____0.00

    F. POST-PETITION APPRAISAL/BROKER'S PRICE OPINION FEES:        $_____0.00

    G. FORCED PLACED INSURANCE EXPENDED BY MOVANT:        $_____0.00

15. AMOUNT HELD IN SUSPENSE BY MOVANT:        $_____0.00

16. OTHER POST-PETITION FEES, CHARGES OR AMOUNTS CHARGED TO DEBTOR(S)'S ACCOUNT AND NOT LISTED ABOVE:

*(IF ADDITIONAL SPACE IS REQUIRED, LIST THE AMOUNT(S) ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM; STATE THE EXHIBIT NUMBER HERE: _____.)*

14-034475

## REQUIRED ATTACHMENTS TO MOTION

PLEASE ATTACH THE FOLLOWING DOCUMENTS TO THIS MOTION AND INDICATE THE EXHIBIT NUMBER ASSOCIATED WITH EACH DOCUMENT.

(1)     COPIES OF DOCUMENTS THAT ESTABLISH MOVANT'S INTEREST IN THE SUBJECT PROPERTY. FOR PURPOSES OF EXAMPLE ONLY, THIS MAY BE A COMPLETE AND LEGIBLE COPY OF THE PROMISSORY NOTE OR OTHER DEBT INSTRUMENT TOGETHER WITH A COMPLETE AND LEGIBLE COPY OF THE MORTGAGE AND ANY ASSIGNMENTS IN THE CHAIN FROM THE ORIGINAL MORTGAGEE TO THE CURRENT MOVING PARTY. (EXHIBIT A.)

(2)     COPIES OF DOCUMENTS THAT ESTABLISH MOVANT'S STANDING TO BRING THIS MOTION. (EXHIBIT A.)

(3)     COPIES OF DOCUMENTS ESTABLISHING THAT MOVANT'S INTEREST IN THE REAL PROPERTY OR COOPERATIVE APARTMENT WAS PERFECTED. FOR THE PURPOSES OF EXAMPLE ONLY, THIS MAY BE A COMPLETE AND LEGIBLE COPY OF THE FINANCING STATEMENT (UCC-1) FILED WITH THE CLERK'S OFFICE OR THE REGISTER OF THE COUNTY IN WHICH THE PROPERTY OR COOPERATIVE APARTMENT IS LOCATED. (EXHIBIT N/A.)

14-034475

## DECLARATION AS TO BUSINESS RECORDS

I, **Chastity Wilson**                , THE **Assistant Secretary**                 OF
Nationstar Mortgage LLC DBA Mr. Cooper , THE MOVANT HEREIN, DECLARE PURSUANT TO 28 U.S.C. SECTION 1746 UNDER PENALTY OF PERJURY THAT THE INFORMATION PROVIDED IN THIS FORM AND ANY EXHIBITS ATTACHED HERETO (OTHER THAN THE TRANSACTIONAL DOCUMENTS ATTACHED AS REQUIRED BY PARAGRAPHS 1, 2, AND 3, ABOVE) IS DERIVED FROM RECORDS THAT WERE MADE AT OR NEAR THE TIME OF THE OCCURRENCE OF THE MATTERS SET FORTH BY, OR FROM INFORMATION TRANSMITTED BY, A PERSON WITH KNOWLEDGE OF THOSE MATTERS; THAT THE RECORDS WERE KEPT IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY; AND THAT THE RECORDS WERE MADE IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY AS A REGULAR PRACTICE.

I FURTHER DECLARE THAT COPIES OF ANY TRANSACTIONAL DOCUMENTS ATTACHED TO THIS FORM AS REQUIRED BY PARAGRAPHS 1, 2, AND 3, ABOVE, ARE TRUE AND CORRECT COPIES OF THE ORIGINAL DOCUMENTS.

EXECUTED AT   **Lewisville, Texas**

ON THIS  **11**   DAY OF   **July**         , 20 **19**

Chastity Wilson
Assistant Secretary of Nationstar Mortgage LLC
d/b/a Mr. Cooper
*Chastity Wilson*
Affiant

NAME:
TITLE:
MOVANT:        Nationstar Mortgage LLC D/B/A Mr.
               Cooper As Servicer For U.S. Bank
               National Association, as Trustee for
               CSFB Mortgage-Backed Pass-Through
               Certificates, Series 2004-7
STREET ADDRESS:   8950 Cypress Waters Blvd
CITY, STATE AND ZIP CODE:   Coppell, Texas 75019

## DECLARATION

I, **Chastity Wilson**              , THE **Assistant Secretary**            OF
Nationstar Mortgage LLC DBA Mr. Cooper, THE MOVANT HEREIN, DECLARE PURSUANT TO 28 U.S.C. SECTION 1746 UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT BASED ON PERSONAL KNOWLEDGE OF THE MOVANT'S BOOKS AND BUSINESS RECORDS.

EXECUTED AT   **Lewisville, Texas**

ON THIS **11**   DAY OF   **July**       , 20 **19**

Chastity Wilson
Assistant Secretary of Nationstar Mortgage LLC
d/b/a Mr. Cooper
*Chastity Wilson*
Affiant

NAME:
TITLE:
MOVANT:        Nationstar Mortgage LLC d/b/a Mr.
               Cooper as Servicer for U.S. Bank
               National Association, as Trustee for
               CSFB Mortgage-Backed Pass-Through
               Certificates, Series 2004-7
STREET ADDRESS:   8950 Cypress Waters Blvd
CITY, STATE AND ZIP CODE:   Coppell, Texas 75019

14-034475

**EXHIBIT "D"**

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **O HYONG LEE** |
| | First Name — Middle Name — Last Name |
| Debtor 2 | **YOUNG HEE LEE** |
| (Spouse if, filing) | First Name — Middle Name — Last Name |
| United States Bankruptcy Court for the: | EASTERN DISTRICT OF NEW YORK |
| Case number (if known) | |

☐ Check if this is an
amended filing

## Official Form 106D

# Schedule D: Creditors Who Have Claims Secured by Property

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

■ Yes. Fill in all of the information below.

**Part 1:    List All Secured Claims**

| 2. List all secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name. | | Column A<br>**Amount of claim**<br>Do not deduct the<br>value of collateral. | Column B<br>**Value of collateral**<br>that supports this<br>claim | Column C<br>**Unsecured**<br>portion<br>If any |
|---|---|---|---|---|
| **2.1    KJY Investments LLC**<br>Creditor's Name<br><br>**21 Mohegan Trail**<br>**Saddle River, NJ 07458**<br>Number, Street, City, State & Zip Code | Describe the property that secures the claim:<br>**74 Lee Avenue Albertson, NY 11507**<br>**Nassau County** | $198,455.04 | $850,000.00 | $0.00 |

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a
community debt

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.

■ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Date debt was incurred    **October 2013**        Last 4 digits of account number _____

Debtor 1  **O HYONG LEE**
    First Name        Middle Name        Last Name

Debtor 2  **YOUNG HEE LEE**
    First Name        Middle Name        Last Name

Case number (if known) _____

| 2.2 | **Nationstar Mortgage LLC** | Describe the property that secures the claim: | $490,788.98 | $850,000.00 | $0.00 |

Creditor's Name

**d/b/a Mr. Cooper**
**P.O.Box 60516**
**City of Industry, CA**
**91716**

Number, Street, City, State & Zip Code

Describe the property that secures the claim:

**74 Lee Avenue Albertson, NY 11507**
**Nassau County**

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

■ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

**Date debt was incurred** 08/04/2004     **Last 4 digits of account number** 7848

Add the dollar value of your entries in Column A on this page. Write that number here: $689,244.02

If this is the last page of your form, add the dollar value totals from all pages.
Write that number here: $689,244.02

| **Part 2:** | **List Others to Be Notified for a Debt That You Already Listed** |

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com      Best Case Bankruptcy